# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TENNESSEE
# NORTHERN DIVISION

| | |
|---|---|
| ST. PAUL FIRE & MARINE INSURANCE COMPANY, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. 3:07-cv-39<br>) Phillips/Shirley |
| T.U. PARKS CONSTRUCTION CO., SUNTRUST BANK, and LOVEMANS ON MARKET, LLC., | )<br>)<br>)<br>) |
| Defendants. | ) |

## MEMORANDUM AND OPINION

The matter before the Court involves a declaratory action by a surety against its principal/contractor and obligee/owner. The defendants have filed motions to dismiss [Docs. 8 and 10] pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, alleging that the plaintiff surety has failed to demonstrate an "actual controversy" in its complaint as required by the Declaratory Judgment Act, 28 U.S.C. § 2201 ("Declaratory Judgment Act"). The Court has received and carefully considered responses and replies. For the reasons that follow, defendants' dispositive motions [Docs. 8 and 10] are **GRANTED, as set forth below**.[1]

---

[1] The plaintiff has requested oral argument with respect to defendants' dispositive motions in its response. However, the Court has reviewed the briefs and evidence submitted and does not feel that oral argument is necessary. Therefore, plaintiff's request for oral argument is denied.

1

I.       **Facts**

As the law requires, all disputed facts and inferences are resolved most favorably to the plaintiff. Furthermore, the Court merely provides an abridged summary of relevant facts for the purposes of this opinion.

On June 25, 2001, T.U. Parks Construction Co. ("Parks"), as contractor, and 800 Market Properties, LLC ("Market Properties"), as owner, entered into a contract for construction for the Lovemans on Market Project ("Lovemans Project"). Parks began construction pursuant to the contract, and St. Paul Fire & Marine Insurance Company ("St. Paul"), as surety, issued a performance bond for the Lovemans Project with Parks as principal and Market Properties as obligee, which was later changed to Lovemans on Market, LLC ("Lovemans").

Parks completed the work contemplated by the contract before any disputes arose between Parks and Lovemans. However, shortly thereafter, a dispute arose between Lovemans and Parks regarding certain allegedly defective stone and masonry work performed by Parks and/or its subcontractors. Accordingly, Lovemans placed Parks on notice of the allegedly defective work in September of 2003. On August 2, 2004, approximately one year after Lovemans put Parks on notice, Lovemans sent correspondence to both Parks and St. Paul asking for a conference with Parks and St. Paul, indicating that it was considering declaring a contractor default. However, through correspondence dated August 17, 2004, prior to a conference being scheduled, Lovemans

informed St. Paul that Parks and Lovemans had resolved and settled their dispute; as a result, Lovemans was withdrawing its request for a conference with Parks and St. Paul; and Lovemans did not intend to declare Parks in default. This correspondence states as follows:

> As a result of this agreement [between Parks and Lovemans], and in consideration of the initiation of immediate repair work, Lovemans does not anticipate declaring a contractor default in the interim while the repair work is proceeding. Therefore, there is no current immediate exposure to St. Paul on the above-referenced Performance Bond.

In Lovemans' August 17, 2004 correspondence to St. Paul, Lovemans informed St. Paul that Lovemans and Parks had entered into an Agreement Regarding Repair of Stonework ("Settlement Agreement"). Pursuant to Section 4 of the Settlement Agreement, Lovemans agreed to pay Parks for the remedial work. Parks and its subcontractor(s) ultimately completed the work required under the Settlement Agreement, and the work was accepted by Lovemans. St. Paul was not informed of and did not participate in any of the negotiations giving rise to the terms and conditions of the Settlement Agreement; was not requested to be a party to the Settlement Agreement; and did not agree to be bound by the Settlement Agreement. Moreover, Lovemans did not request or demand that St. Paul be involved in any way with or agree to the method to correct the alleged defective work which was the subject of the Settlement Agreement.

Subsequent to Parks' repair of the stone and masonry work pursuant to the original contract for construction and the settlement agreement, Lovemans demanded that Parks arbitrate the question of which party is responsible for the cost of the stone and masonry

3

repairs.

On June 28, 2006, Lovemans sent correspondence to St. Paul informing St. Paul of a failed attempt to mediate the dispute regarding costs on the Lovemans project. Further, Lovemans stated that it "is looking directly to T.U. Parks or its bonding company, St. Paul . . ., to pay the costs Lovemans incurred to cure the defects."[2]

In correspondence to Lovemans, dated December 11, 2006, St. Paul attached a courtesy copy of the complaint in this action currently pending before this Court, and stated as follows in pertinent part:

> While the [June 28, 2006] letter does not qualify as a "claim" under the referenced bond, it does put the surety on notice that Lovemans may have a claim in the event that it is successful in an arbitration award in its favor. Although there is not yet any claim to which the Surety is obliged to respond, the assertion raises several issues . . . .
>
> [W]e thought it prudent to file a Complaint for Declaratory Judgement to obtain a determination of the obligations of the Surety under the surety bond prior to events taking place that might prejudice the rights or defense of the Surety.

St. Paul's declaratory action essentially states that for any obligation of St. Paul to arise under the bond, Lovemans was required to first (1) declare a contract default and (2) formally terminate Parks' right to complete the contract.[3] Since Lovemans did not do so,

---

[2]The bond provisions state that Parks and St. Paul are jointly and severally bound to Lovemans for performance of the construction contract.

[3]Among other provisions, Lovemans rely on paragraph 3 of the bond, which provides as follows:

3. If there is no Owner Default, [St. Paul's] obligation under this Bond **shall arise after**:

4

St. Paul owes no obligation.  In addition to a declaration of discharge under the contract default provision of the bond, St. Paul's complaint also seeks other relief with regard to the arbitration; the Settlement Agreement; other provisions under the bond; and Lovemans' alleged claims against Parks for negligent construction, negligent or intentional misrepresentation, and violation of the Tennessee Consumer Protection Act.

Despite all of these claims plaintiff seeks to have adjudicated, the defendants have presented a threshold question: Has St. Paul demonstrated an "actual controversy" as required by the Declaratory Judgment Act?  The Court addresses this question in the analysis set forth below.

## II. Standard of review

Before the Court is a motion to dismiss.  While styling the motion as one for

---

> 3.1 [Lovemans] has notified the Contractor and [St. Paul] . . . that [Lovemans] is considering declaring a Contractor Default and has requested and attempted to arrange a conference with the Contractor and [St. Paul] to be held not later than 15 days after receipt of such notice to discuss methods of performing the Contract.  If [Lovemans], the Contractor and [St. Paul] agree, the Contractor shall be allowed a reasonable time to perform the Contract, but such an agreement shall not waive [Lovemans]'s right, if any, subsequently to declare a Contractor Default; and
>
> 3.2 **[Lovemans] has declared a Contractor Default and formally terminated the Contractor's right to complete the contract.**  Such Contractor Default shall not be declared earlier than 20 days after the Contractor and [St. Paul] have received notice as provided in Subparagraph 3.1; and
>
> 3.3 [Lovemans] has agreed to pay the Balance of the Contract Price to [St. Paul] in accordance with the terms of the Contract or to a contractor selected to perform the Contract in accordance with the terms of a contract with [Lovemans].

(emphasis added).

5

dismissal, in its memorandum in support of the motion, the defendant argues from the summary judgment point of view. The Court notes that Fed.R.Civ.P 12(b) requires the Court to treat the motion to dismiss under Fed.R.Civ.P. 12(b)(6) as a motion for summary judgment if matters outside of the pleadings are presented to and not excluded by the Court. The Court will therefore consider the motion as one for summary judgment.

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment will be granted by a court only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. The burden is on the moving party to conclusively show that no genuine issue of material fact exists. A court must view the facts and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986); *Morris v. Crete Carrier Corp.,* 105 F.3d 279, 280-81 (6th Cir.1997); *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987).

Once the moving party presents evidence sufficient to support a motion under Rule 56 of the Federal Rules of Civil Procedure, the nonmoving party is not entitled to a trial simply on the basis of allegations. The non-moving party is required to come forward with some significant probative evidence, which makes it necessary to resolve the factual dispute at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317 (1986). The moving party is entitled to summary judgment if the non-moving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof. *Celotex,* 477 U.S. at 323; *Collyer v. Darling,* 98 F.3d 220 (6th Cir. 1996).

### III. Motion for summary judgment and applicable law

A threshold question in every federal case is whether a court has judicial power to entertain suit. U.S.C.A. Const. Art. 3, § 2, cl. 2. Federal judicial power is limited to those disputes which confine federal courts to a role consistent with a system of separated powers and which are traditionally thought to be capable of resolution through judicial process. *Id.* Article III standing requires a litigant to have suffered injury-in-fact, fairly traceable to defendant's allegedly unlawful conduct, and likely to be redressed by requested relief. *Id.*

In the case currently pending before the Court, the plaintiff is seeking relief under the Declaratory Judgment Act.[4] Declaratory judgments are typically sought before the completed "injury-in-fact" has occurred, *Pic-A-State Pa., Inc. v. Reno*, 76 F.3d 1294, 1298 (3rd Cir.), *cert. denied*, 517 U.S. 1246, (1996), but must be limited to resolution of an "actual controversy." *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 239-40 (1937); *see* 28 U.S.C.A. § 2201. When seeking declaratory and injunctive relief, a plaintiff must show actual present harm or a significant possibility of future harm in order to demonstrate the need for review. *See Bras v. California Pub. Utilities Comm'n*, 59 F.3d 869, 873 (9th Cir.1995), *cert. denied*, 516 U.S. 1084 (1996).

---

[4]In particular, the Declaratory Judgment Act, 28 U.S. C. § 2201(a) states as follows in pertinent part:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.

The Supreme Court has explained that an actual controversy in this sense is one that is appropriate for judicial determination, stating:

> A justiciable controversy is . . . distinguished from a difference or dispute of a hypothetical or abstract character, from one that is academic or moot. The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts. Where there is such a concrete case admitting of an immediate and definitive determination of the legal rights of the parties in an adversary proceeding upon the facts alleged, the judicial function may be appropriately exercised [under the Act]. . . .

*Aetna Life Ins. Co.*, 300 U.S. at 240-41 (citations omitted). To determine whether a plaintiff has standing to adjudicate an "actual controversy," requisite for relief under the Declaratory Judgment Act, one must ask whether the parties have "adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment" even though the injury-in-fact has not yet been completed. *Golden v. Zwickler*, 394 U.S. 103, 108 (1969); *Michigan State Chamber of Commerce v. Austin*, 788 F.2d 1178, 1181 (6th Cir.1986).

In the matter before the Court, Lovemans has made no actual demand upon St. Paul for payment or for any other performance under the bond; no finding of liability of Parks has been entered; and no determination of whether Parks is or would be able to pay any judgment against Parks in favor of Lovemans has been made. *See Lizza and Sons, Harford Accident & Indemnity Company*, 247 F.2d 262, 265 (1st Cir. 1957) ("[A]t the time [the surety] brought its suit [, the owner] had made no demand upon [the surety,] and there was no way to tell whether it ever would make demand. That depended on whether or not

[the owner] suffered any loss, for without loss no action would lie on the bond. . . . . ).

Under the circumstances, the Court cannot see how St. Paul's controversy with Lovemans and Parks can be classified as ripe and/or appropriate for declaratory relief. Rather, this action is premature and not suitable for declaratory judgment determination. Accordingly, the Court declines to hear the plaintiff's asserted claims, and therefore dismisses the case without prejudice subject to refiling if and when the matter is ripe for consideration.

### IV. CONCLUSION

For the reasons hereinabove set forth, defendants' dispositive motions [Doc. 8 and 10] are **GRANTED**. Plaintiff's claims are dismissed without prejudice subject to refiling if and when the matter is ripe for consideration.

**IT IS SO ORDERED.**

ENTER:

s/Thomas W. Phillips
UNITED STATES DISTRICT JUDGE